# PELUSO & TOUGER, LLP

### ATTORNEYS AT LAW
### 70 LAFAYETTE STREET
### NEW YORK, NEW YORK 10013

TELEPHONE: (212) 608-1234
FACSIMILE:  (212) 513-1989

**By ECF**

October 5, 2018

Honorable Robert W. Sweet
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>United States v. Jamese Snipes</u>, 17 Cr. 611 (RSW)

Your Honor,

To fully understand why and how Mr. Snipes stands before this Court for sentencing and to arrive at a just and fair sentence this Court must first close it's eyes and live for a moment in Mr. Snipes' life story.  You are growing up in an impoverished area of the Bronx abandoned by your father.  Your mother works multiple jobs just to keep the family afloat.  As you grow up you find yourself spending more and more time in the streets hanging out. In your young immature and easily influenced mind you see the only people who have money to spend are the young men involved in gangs.  You notice the gangs offer you camaraderie and sense of being a part of something.  You know it is wrong.  You know your mother has stated time and again to stay away from these people that they will only bring you down.  But there is powerful magnetism to what these young men are offering you so you succumb.  You give in.  You make the worst decision you have made in your young life and you become one of them.

As Mr. Snipes mother states in the PSR in ¶132, Mr. Snipes has always been easily misled. She states that there are two different Jamese Snipes the one she knows and the one the streets know.  She is shocked by her son's involvement in gangs and has a hard time believing that her son acts like he does on the streets.  But this is not the only anomaly in Jamese Snipes' story.  There are others that prove that Mr. Snipes truly is a good person at heart and not the gangbanger alleged in the indictment.  Most young men who are involved in gangs do not have one girlfriend for 6 years.  Most young men who are involved in gangs do not support their children let alone the children of others.  Most young men involved in gangs do not also work three jobs at a time to help support their family.  But Mr. Snipes has done all of that.  He has had one girlfriend since he was 15 years old.  Before he was arrested he was working 3 jobs to help support his family and he even supported another child of his girlfriend who is not his but he has acted as a surrogate father too.  These actions by Jamese separate him from the typical person

Honorable Robert W. Sweet
October 5, 2018
Page 2 of 13

involved in gangs.   Furthermore, since his arrest he has not spent time just sitting around complaining about being in jail or blaming others for his circumstances.  To the contrary he has completed the Math segment of his GED, he has taken numerous courses to improve his chances for employment when he is ultimately released from jail and he has taken full responsibility for his predicament.

In his letter to the Court attached hereto it is easy for the Court to see that Mr. Snipes is as his mother stated an intelligent young man.  He is outlined to the Court his regrets for the decisions he has made and he has vowed to make better ones in the future.  Not to say that I have read as many of these letters as the Court has but this letter seemed unique to me in the maturity expressed and the fact that Mr. Snipes is starting now to plan for his future so that when he is released from jail he can hit the ground running and start to fulfill his life plan of supporting his family and taking them out of the Bronx and giving them a better life.  He understands this will not be easy but Mr. Snipes now understands nothing in life worth getting is easy.  It takes hard work and dedication.  He is not leaving jail looking for the quick fix.

Mr. Snipes also wants very dearly to give back to his community and repay it for the harms he has caused.  He wants to try to stop other young easily influenced men from making the same bad decisions he did.  This is important to him and is something he very much wants to do.

Mr. Snipes was the perfect prey for the bad influences of his neighborhood and Mr. Snipes being the vulnerable teenager he was and looking for any group to accept him and make him feel stronger and cooler than he felt succumbed to their advances.  This is how and why he has ended up standing before this Court for sentence.  Mr. Snipes never was the leader or the boss he was just another kid who joined in, to feel wanted, look cool and be able to afford to buy some nice clothes.

Mr. Snipes does not seek to minimize the seriousness of his past transgressions and the harm they have caused but he does want this Court to know that he has worked hard to turn his life around and has every intention from this point on to leading a law abiding life and putting criminal conduct far behind him.  I have seen first hand Mr. Snipes' maturity and commitment to his new life choices.  He has been from the beginning a model client. He has always realized his wrongs and the fact that he must pay for those wrongs.  He has always taken responsibility for his actions and has maintained that that lifestyle is behind him.   He has a new found respect for the judicial system.  He has lost his entire "street attitude" and he has replaced it with a drive to better himself.  There are no longer two Jamese Snipes.   There is only one, the one his family has known all along, the other Jamese Snipes is gone for good.  The one thing that is abundantly clear is the remorse he feels about his actions in the current charges.  This arrest has truly become a fork in the road in Mr. Snipes' life and he is determined never to travel down the road of criminal

Honorable Robert W. Sweet
October 5, 2018
Page 3 of 13

conduct again.  It is not just that he knows he has to say these things, I truly believe he believes that he must turn his life around right now because he did not like where it was going.   It is also that he now understands that no good can come from criminal conduct and involvement in criminal conduct only causes harm to himself and more importantly to the loved ones in his life that care so much about him.  I know this Court has heard all these words and promises before but the proof in this case is the actions Mr. Snipes has taken since his arrest and the fact that prior to his arrest there was distinct evidence that that Mr. Snipes had a productive citizen inside of him.  He has accepted this hurdle in his life and is determined to do everything he can to overcome it.   Thus, it is the defendant's most respectful request that a sentence of 24 months would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).

Mr. Snipes knows he has committed a serious wrong against society but he highly regrets his decisions he first made as a teenager and has attempted to use this time since his arrest to not only better himself but also to prove to all that he is serious about his decision to change his lifestyle and make himself a productive citizen of his community.  Mr. Snipes knows all to well the downside of letting narcotics into his life.  As a child he witnessed the negative impact of drugs on those in his community and on himself.   He wants to stop the vicious cycle of drug use, criminal acts, jail time and replace it with a law abiding productive lifestyle.

Mr. Snipes is a young man who made a terrible decision in an attempt to fill a void in his life and his feelings of alienation.  As the Court can see in the PSI Mr. Snipes has not only has admitted his wrongs and his remorse for his actions, he has gone the step further and has laid out his plan for his future and how he intends to become a man that everyone he knows could be proud of.  He does not intend to spend the rest of his life looking for the quick fix for life's problems and resorting to criminal conduct, he intends to become a hard working productive citizen.  Mr. Snipes also does not just say he will do this, he has laid out to the Court and his family just how he intends to do it. He intends to renew his education when he is released from custody and then work in society and help those around him not make the mistakes he has made.  Mr. Snipes has gone through a heartfelt assessment of his life and what he wants to amount to and I believe he has decided on a life plan that will be successful.  Mr. Snipes has tried to learn from this experience and has truly put a lot of thought into his plan.

I certainly do not have the benefit of a crystal ball to look into so I can't tell this Court the future of Mr. Snipes and if he will indeed fulfill his promise.  But I can tell this Court that before Mr. Snipes was arrested there was a small fire burning inside him that demonstrated he could live a productive life outside of criminal conduct as evidenced by his family life, since his arrest this flame has grown in size and now I believe has

Honorable Robert W. Sweet
October 5, 2018
Page 4 of 13

eviscerated any desire he has to return to criminal conduct. He has certainly learned from the mistakes he has made and has learned the lesson that no matter what problems life throws at you, turning to criminal conduct to solve them is not the answer. He has learned that his family is what is important in life and it is through hard work that he must solve his problems. This lesson has been burned into his very soul so much so that I do not think he will waiver again. I am not a fortuneteller but I am thoroughly convinced that neither this Court nor any other Court will ever have Mr. Snipes before it again as a criminal defendant. He has learnt that criminal conduct and even being around people who are prone to criminal conduct is just not worth it. He has certainly learned that the old saying "crime doesn't pay" is true. It is not worth giving up your freedom for. It is not worth being separated from your family and friends. Mr. Snipes wants to be a positive influence on society and fulfill his vast potential. He cannot attain that position behind bars and Mr. Snipes knows that. Most importantly, Mr. Snipes to his great joy has two children and he wants to be there for them in every way and be a positive influence on their life. Mr. Snipes has the directional North Star in his life now and he knows he cannot deviate from that path.

As stated in the plea agreement the agreed upon Guideline range in this case is 70 - 87 months. The defendant has accepted this Guideline range and agrees that if the Guidelines are going to be accepted by this Court this is the range the Court has before it. Mr. Snipes would most respectfully request that when this Court considers all of the factors present in this case that a sentence of 24 months serves the ends of justice. Mr. Snipes is well aware that he is asking this Court to grant a below Guideline Sentence. The Probation Department and the Guideline's recommendation fails to take into consideration the individual characteristics of Mr. Snipes and his case and merely rests on a cold calculation of numbers and this is highly improper in this day and age. Also, the Guidelines fail to take into consideration the multiple studies that have been done in this area (which will be discussed later on in this letter) that prove Mr. Snipes is at a low risk for recidivism. Thus, it is respectfully submitted that the Court only consider the Guidelines as a starting point and when it considers all of the factors herein decide that these factors point to a below Guideline sentence. There is no factor that can be established herein that point to a higher sentence than the Guidelines. The worst factors established are the fact that Mr. Snipes committed the charged criminal acts and his criminal history. The Guidelines have already taken this into consideration. Thus according to the Supreme Court and the sentencing factors outlined by Congress in § 3553 (a) it is respectfully submitted that Mr. Snipes should receive a below Guidelines sentence.

It is the defendant's position that once the Court considers all the relevant factors in this matter that a sentence of 24 months for Mr. Snipes would satisfy the Court's mandate to "to impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481

Honorable Robert W. Sweet
October 5, 2018
Page 5 of 13

(2007).   This phrase is euphemistically referred to as the "parsimony clause," it is in reality a manner of codifying the constitutional doctrine of the least restrictive alternative.   "Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction necessary to achieve the purposes for which it is imposed …" See, American Bar Association, Standards For Criminal Justice, Chapter 18, "Sentencing Alternatives and Procedures", 18-3.2(a)(iii)  (1993).

Most respectfully there is another reason that this Court in this instance should consider the defendant's respectful request of 24 months.   It is the defendant's position that Sentencing Courts fail to give adequate weight to the ramifications of a defendant receiving a felony conviction in today's society.   Mr. Snipes is a 20-year-old man who will have to live the rest of his life with the stigma that he is a convicted felon due to his involvement with the subject criminal organization.   Yes, Mr. Snipes brought this punishment on himself by committing the acts he did but his conviction herein will have life long negative effects on his life.  In his decision in <u>United States of America v. Chevelle Nesbeth</u>, 15 Cr 18 (FB) Senior District Judge Frederic Block of the Eastern District Court of New York, called into question the lack of consideration judges pay to the ramifications of a felony conviction.  The Court stated:

> There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court imposed sentences. Many, under both federal and state law, attach automatically upon a defendant's conviction. The effects of these collateral consequences can be devastating.
> As Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us. "

Decision at pg. 2.  The Court in a lengthy decision points out that there are over 50,000 federal and state statutes that impose penalties, disabilities or disadvantages on convicted felons. The Court then proceeds to outline in detail some of the disadvantages that convicted felons suffer. They are rendered ineligible for public housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional benefits, student loans, the Hope Scholarship, tax credits, and Legal Services Corporation representation in public housing eviction proceedings and a myriad of others.  Thus, it is obvious that a poor African American man with a felony conviction is going to have a much more difficult time securing the most basic needs of a person such as employment and housing.  Thus, Mr. Snipes will continue to suffer the consequences of his actions long after he is ultimately released custody.  The extra years that this Court might be considering adding to Mr. Snipes' sentence will only serve to amplify the disadvantages he will have to over come.

Honorable Robert W. Sweet
October 5, 2018
Page 4 of 13

eviscerated any desire he has to return to criminal conduct. He has certainly learned from the mistakes he has made and has learned the lesson that no matter what problems life throws at you, turning to criminal conduct to solve them is not the answer. He has learned that his family is what is important in life and it is through hard work that he must solve his problems. This lesson has been burned into his very soul so much so that I do not think he will waiver again. I am not a fortuneteller but I am thoroughly convinced that neither this Court nor any other Court will ever have Mr. Snipes before it again as a criminal defendant. He has learnt that criminal conduct and even being around people who are prone to criminal conduct is just not worth it. He has certainly learned that the old saying "crime doesn't pay" is true. It is not worth giving up your freedom for. It is not worth being separated from your family and friends. Mr. Snipes wants to be a positive influence on society and fulfill his vast potential. He cannot attain that position behind bars and Mr. Snipes knows that. Most importantly, Mr. Snipes to his great joy has two children and he wants to be there for them in every way and be a positive influence on their life. Mr. Snipes has the directional North Star in his life now and he knows he cannot deviate from that path.

As stated in the plea agreement the agreed upon Guideline range in this case is 70 - 87 months. The defendant has accepted this Guideline range and agrees that if the Guidelines are going to be accepted by this Court this is the range the Court has before it. Mr. Snipes would most respectfully request that when this Court considers all of the factors present in this case that a sentence of 24 months serves the ends of justice. Mr. Snipes is well aware that he is asking this Court to grant a below Guideline Sentence. The Probation Department and the Guideline's recommendation fails to take into consideration the individual characteristics of Mr. Snipes and his case and merely rests on a cold calculation of numbers and this is highly improper in this day and age. Also, the Guidelines fail to take into consideration the multiple studies that have been done in this area (which will be discussed later on in this letter) that prove Mr. Snipes is at a low risk for recidivism. Thus, it is respectfully submitted that the Court only consider the Guidelines as a starting point and when it considers all of the factors herein decide that these factors point to a below Guideline sentence. There is no factor that can be established herein that point to a higher sentence than the Guidelines. The worst factors established are the fact that Mr. Snipes committed the charged criminal acts and his criminal history. The Guidelines have already taken this into consideration. Thus according to the Supreme Court and the sentencing factors outlined by Congress in § 3553 (a) it is respectfully submitted that Mr. Snipes should receive a below Guidelines sentence.

It is the defendant's position that once the Court considers all the relevant factors in this matter that a sentence of 24 months for Mr. Snipes would satisfy the Court's mandate to "to impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481

Honorable Robert W. Sweet
October 5, 2018
Page 5 of 13

(2007).   This phrase is euphemistically referred to as the "parsimony clause," it is in reality a manner of codifying the constitutional doctrine of the least restrictive alternative.   "Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction necessary to achieve the purposes for which it is imposed ..." See, American Bar Association, Standards For Criminal Justice, Chapter 18, "Sentencing Alternatives and Procedures", 18-3.2(a)(iii) (1993).

Most respectfully there is another reason that this Court in this instance should consider the defendant's respectful request of 24 months.   It is the defendant's position that Sentencing Courts fail to give adequate weight to the ramifications of a defendant receiving a felony conviction in today's society.   Mr. Snipes is a 20-year-old man who will have to live the rest of his life with the stigma that he is a convicted felon due to his involvement with the subject criminal organization.   Yes, Mr. Snipes brought this punishment on himself by committing the acts he did but his conviction herein will have life long negative effects on his life.   In his decision in <u>United States of America v. Chevelle Nesbeth</u>, 15 Cr 18 (FB) Senior District Judge Frederic Block of the Eastern District Court of New York, called into question the lack of consideration judges pay to the ramifications of a felony conviction.   The Court stated:

> There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court imposed sentences. Many, under both federal and state law, attach automatically upon a defendant's conviction. The effects of these collateral consequences can be devastating.
> As Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us. "

Decision at pg. 2.   The Court in a lengthy decision points out that there are over 50,000 federal and state statutes that impose penalties, disabilities or disadvantages on convicted felons. The Court then proceeds to outline in detail some of the disadvantages that convicted felons suffer. They are rendered ineligible for public housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional benefits, student loans, the Hope Scholarship, tax credits, and Legal Services Corporation representation in public housing eviction proceedings and a myriad of others.   Thus, it is obvious that a poor African American man with a felony conviction is going to have a much more difficult time securing the most basic needs of a person such as employment and housing.   Thus, Mr. Snipes will continue to suffer the consequences of his actions long after he is ultimately released custody.   The extra years that this Court might be considering adding to Mr. Snipes's sentence will only serve to amplify the disadvantages he will have to over come.

Honorable Robert W. Sweet
October 5, 2018
Page 6 of 13

Thus, it is respectfully suggested that the Court consider the collateral consequences the defendant will suffer due to his felony conviction especially the hardship it will cause him in finding gainful employment and housing.  It is suggested that these consequences and a 60-month incarceration render a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

This Court must also consider the sentencing factors of § 3553(a).  We submit most respectfully that after the Court applies those factors, it will agree that a 24-month jail sentence is appropriate.

As your Honor is well aware, the sentencing guidelines are no longer mandatory and sentencing judges are provided tremendous discretion to determine an appropriate sentence outside of the Guidelines range. As long as the Court considers the Guidelines and the relevant § 3553(a) factors, the sentence imposed should be upheld as long as it is not unreasonable based on individualized considerations.  See United States v. Booker, 543 U.S. 220, 264 (2005); United States v. Crosby, 397 F. 3d 103, 111 (2d Cir. 2005); Gall, 552 U.S. at 49-50. Therefore, the application of the Guidelines is just one factor for the Court to consider when exercising its tremendous discretion and the Court can determine how much weight to attribute to this consideration.  Gall, 552 U.S. at 38; Kimbrough, 552 U.S. at 11.

Title 18 U.S.C. § 3553(a) requires sentencing judges to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the sentencing purposes of punishment, deterrence and rehabilitation. In determining the appropriate sentence, the court must first calculate the applicable sentencing Guideline range and then consider the relevant § 3553(a) factors, including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (4) to afford adequate deterrence to criminal conduct; (5) to protect the public from further crimes of the defendant; (6) to provide the defendant with needed rehabilitative or other treatment; and (7) the need to avoid unwarranted disparities in sentencing. I have addressed the most relevant § 3553(a) factors below.

**1. & 2. Mr. Snipes' Background and the Nature and Circumstances of the Offense Establish That A 24 Month Sentence is just and Adequate.**

Mr. Snipes is a twenty (20) year old man who made the biggest mistake of his life when he turned to criminal behavior to fill a void in his life.  It was a terrible decision on his part and he knows it. Mr. Snipes now fully understands that he must not let criminal activity creep back into his life and he needs to work hard to get ahead and attain the goals he has set for himself.  Mr. Snipes has demonstrated to this Court that he truly wants to put

Honorable Robert W. Sweet
October 5, 2018
Page 7 of 13

his prior criminal conduct behind him and is sincere in his goals to be a productive citizen. Mr. Snipes knows what he has to do, has demonstrated that he can do it and now is just asking for the chance to do it.

**3. A 24-Month Jail Sentence Will Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Protect the Public, and Deter Mr. Snipes and Others.**

Mr. Snipes understands the seriousness of the offense. He knows what he did was a grave offense not only against the law but also against society.  The sentence he has respectfully asked for is not a slap on the wrist and is a meaningful sentence.  His arrest in this case has already had a major impact on him and he does not need and extended sentence to reteach him a lesson he has already learnt.  Mr. Snipes has not shirked from taking responsibility for his actions since the beginning of this case and he has demonstrated remorse that I truly believe he feels.

Mr. Snipes has taken this arrest as a turning point, he knows he has made poor choices in the past and should have reached the conclusions he has now found long ago.  He is truly regretful for the years of his life he has wasted and literally thrown away.  Mr. Snipes will have to deal with his felony convictions throughout his life because of this youthful mistake.  Adding an extended prison term to his biography will have no redeeming factor as he has already met the need for rehabilitation and the felony record is adequate punishment.  The only result sentencing him to a further extended prison term will incur is making it more difficult for him to find gainful employment, delay the continued maturation of his life plan and satisfy the thirst some people in our nation have for retribution and imprisonment.  It will have no societal benefit.

Society has nothing to fear from Mr. Snipes.  Mr. Snipes has learned his lesson, he saw where life in the gang world was taking him.  The lessons he has learned have been burned into his very soul so much so that I do not think he will waiver again.  Under these circumstances it is most respectfully submitted that a 24 month jail sentence will promote respect for the law.

**4. A 24 Month Jail Sentence is Sufficient in This Instance to Afford Adequate Deterrence to Criminal Conduct.**

Mr. Snipes has certainly been affected by his arrest and never wants to go through this process again.  He realizes that he has risked everything in his life by his involvement in gangs and selling marijuana.  He risked his ability to fulfill his potential but most of all he risked his freedom and he has learned that nothing is worth risking your freedom for.  He will stand before this Court at sentencing a very scared and nervous man as this Court holds his entire future in it's hand because he realizes the consequences of this Court's

Honorable Robert W. Sweet
October 5, 2018
Page 8 of 13

decision and he never wants to be in that position again.  If this Court decides that a 24-month jail sentence is just and deserved in this matter Mr. Snipes' reaction will most assuredly not be "oh I got away with one, I can do it again."  To the contrary Mr. Snipes' reaction will be overwhelming gratitude to this Court and that he never wants to be in the position of risking everything again.   Mr. Snipes most respectfully does not need an extended prison sentence to teach him a lesson.  He has learnt the lesson already time again.   The lesson was made perfectly clear to when Federal agents placed him in custody.  He continued to learn the lesson everyday when he has heard the slam of jail cells behind him and the Cos barking out orders.  The lesson has burned into his head every night when he goes to bed unable to be there for his children tomorrow.  And, finally the lesson has been learnt as he has spent these last few weeks nervously awaiting the Court's pronouncement of his sentence.  Furthermore, the lesson will be reinforced once he is released from incarceration while he is on supervised release and for the rest of his life as he deals with the negative collateral consequences of his felony convictions. Mr. Snipes has certainly been deterred from committing any crimes again already.  That lesson has been entrenched in his mind never to be forgotten.

Above I have described the facts relative to specific deterrence and how this arrest and subsequent prosecution have seared into Mr. Snipes' mind the quest to live a law-abiding life and to repay society for the harms he has caused.  However, I would add to those facts the analysis provided by some empirical studies that have been conducted by specialists in this area that support Mr. Snipes' ability to lead a law abiding life.  The studies have considered many factors in determining which defendants are most likely to become recidivists. See, USSC, *Measuring Recididivism* (2004).

The first factor considered is how many previous criminal convictions does the defendant have.   The studies have found that a first offender has only 3.5% chance of being convicted of a crime again.  Those with one criminal history point have a 5.5% chance and those with 2 or more points a 10.3% chance.  Here, while Mr. Snipes does have a prior youthful offender record that is directly related to the crimes charged herein.  Thus his criminal conduct was concentrated in a very small window of his life and thus by these numbers he has very small chance of becoming a recidivist criminal.

The second factor considered is age.  The studies have demonstrated that recidivism declines dramatically with age.   While a person under 21 has a 35.5% chance of committing another crime, this percentage drops to 9.5% for a person of Mr. Snipes' age once he is released from custody.

The third factor considered is employment.  The studies have demonstrated that if a person has maintained stable employment in the past the recidivism rate drastically lowers.  Here, Mr. Snipes has clearly demonstrated an ability to maintain employment by

Honorable Robert W. Sweet
October 5, 2018
Page 9 of 13

the three jobs he worked before his incarceration.   Thus, this factor points to a low recidivist chance.

The fourth factor considered is education. The studies have demonstrated that the more education one has the lower the chance of him or her becoming a recidivist. Mr. Snipes has clearly demonstrated by his actions that education is very important to him.  He has received his GED since his incarceration and is committed to continuing his education in the future.

The fifth factor is family.  The studies have observed that if a person has been married in the past or has close ties to his or her present family members the chance of recidivism is lowered.  Here, Mr. Snipes has a stable relationship with the mother of his children and is very close with his mother.  This would indicate that Mr. Snipes is not regarded as a high risk to become a recidivist.

The sixth factor is absence of drug use.  The studies indicate that those who were not using drugs immediately prior to their arrest have a lower recidivist rate.  Here, Mr. Snipes in the past has only abused one drug, marijuana.

Therefore, when these six factors are considered in their entirety it is found that Mr. Snipes fits in the lowest or lower chances to recidivate in all of them.  Therefore, not only does his personal history demonstrate a low chance of recidivism on his part, the empirical studies conducted by the experts in the field indicate that he has a very low chance to commit new crimes upon his release from jail.

§3553 (a) requires however a sentencing Court to consider not only specific deterrence but also general deterrence.  Above I have described the facts relative to specific deterrence and how this arrest and subsequent prosecution has seared into Mr. Snipes' mind the quest to live a law-abiding life and to repay society for the harms he has caused.  But a Sentencing Court must also consider "general deterrence" when deciding a sentence.  Here the experts have conducted many studies and they have routinely found that there is **no** empirical relationship between sentence length and specific or general deterrence.  In all categories of crime from white collar to drug offenses, from violent crimes to larcenies severe sentences have proven not to deter crime.  The studies have shown however that lengthy sentences do increase the rate of recidivism.  See, Lynne M. Vieraltis et. al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Pub.   Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov.1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm, Miles D. Harer, *Do*

Honorable Robert W. Sweet
October 5, 2018
Page 10 of 13

*Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?*, 7 Fed. Sent. Rep 22 (1994).

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006)

The fact that "general deterrence" is not considered by people considering committing crimes is best demonstrated by the studies of white-collar crimes. For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders. That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white collar criminal would be most likely to indulge in that type of thinking. However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences. See, David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes,* 33 Criminology 587 (1995).

This has proven to be true even in narcotics cases. In a recent study of drug offenders sentenced in the District of Columbia, researchers tracked over a thousand offenders whose sentences varied substantially in terms of prison and probation time. Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, __ Criminology ____ (2009). The results showed that variations in prison and probation time "have no detectable effect on rates of re-arrest." "Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame." In other words, "at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior." Id.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the way one might expect of rational decision makers. Tonry, *Purposes and Functions of Sentencing*, *supra*, at 28-29. A recent review of this issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." See USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf. State law enforcement officials at the Commission's recent hearing confirmed the research results. The late Chief of the Miami Police Department, John Timoney testified that the deterrent effect of the federal system is not its high sentences but the certainty that there will be punishment.

The Courts have also taken into consideration the lack of effect of "general deterrence". In United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) the Sentencing Court after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." This Court in considering what sentence Mr. Snipes should receive for his conduct must of course consider "general deterrence" but based on the above studies it is respectfully submitted that this Court should consider "specific deterrence" to a greater degree than "general deterrence".

**5. A 24 Month Jail Sentence is Sufficient in This Instance to Protect the Public From Further Crimes by Mr. Snipes.**

Honorable Robert W. Sweet
October 5, 2018
Page 12 of 13

Mr. Snipes has demonstrated by his actions since his release that society has nothing to fear from him anymore. Mr. Snipes just wants to do his time in jail and then become the benefit to society he knows he can be. He wants to be a better son, a better partner and most importantly to him someone his children can look up to.

**6. A 24 Month Jail Sentence is Sufficient in This Instance to Provide Mr. Snipes With Needed Rehabilitative or Other Treatment.**

The PSI recommends and Mr. Snipes would certainly want to take any educational/drug/vocational programs if given the opportunity by the Bureau of Prisons. Mr. Snipes is of course willing to participate in any programs the Court or Probation may deem necessary for him in the future.

In United States v. Howe, 543 F.3d 128 (3d Cir. 2008) the Court found that a defendant's post conviction remorse is an adequate reason for a Sentencing Court to grant a defendant a below Guidelines sentence. The Court further noted that the remorse need not be "exceptional". Howe was a white-collar case but I think any defendant can feel remorse for his actions. Here, I think the record is clear that Mr. Snipes feels extraordinary remorse for his actions. This is evident by his pleading guilty to his crimes. Furthermore, his letter to the Court demonstrates his heartfelt remorse for his actions. Thus, Mr. Snipes' remorse is another factor this Court should consider in deciding whether to grant Mr. Snipes a below Guidelines sentence.

**7. A 24 Month Jail Sentence In This Matter Would Not Present The Court With Unwarranted Disparities In Sentencing.**

None of his co-defendants have been sentenced yet but a 24 month jail sentence would not be disparate with sentences on a national scale either. Evidence of this can be derived from the Supreme Court of the United States itself. See, Gall v. United States, 552 U.S. 38 (2007). In Gall the Supreme Court noted:

> a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. Id. at 54

The object of this letter and all the attachments is to give this Court some insight into how and why Mr. Snipes finds himself before your Honor awaiting the pronouncement of sentence and what sentence given the varied sentencing options the Court has at its disposal best accomplishes the goals of a Sentencing Court. It is the defendant's position that after considering all of the relevant factors of Mr. Snipes' situation, the law as it is today and the empirical studies done in this area that a 24-month jail sentence would be

Honorable Robert W. Sweet
October 5, 2018
Page 13 of 13

reasonable herein.  This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in <u>Kimbrough v. United States</u>, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).  It is the defendant's position that the Guideline recommendation of 78 - 97 months fails to take into consideration the individual characteristics of Mr. Snipes and his case, the law as it currently stands and the empirical studies that have been conducted in this area.  This is not only improper in this day and age but violates the dictates of the Supreme Court.  As articulated by the district court in <u>United States v. Coughlin</u>, No.6 Cr. 20005, 2008 WL 313099 (W.D. Ark Feb.1, 2008) on remand after the Supreme Court's decision in <u>Gall</u>: " [B]ased on the unique facts of a particular case, austere adherence to the averages and generalities of the Guidelines can be unjust and contrary to reason.... No chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula."

Finally, the Court will have great authority over Mr. Snipes after he completes his sentence because he will be on post release supervision.  This Court will be an eye-witness to the fact that Mr. Snipes has turned his life around and if Mr. Snipes has not it will certainly be able to severely punish Mr. Snipes for his actions.  But if he is telling the truth and he fulfills all of the vows and promises he has made not only to this Court but also to his family, this Court will know it made the right choice in sentencing him to a 24 month sentence.  Mr. Snipes is a 20-year-old man who made a serious mistake herein and is completely remorseful for his actions.  The Court is admittedly taking a chance on Mr. Snipes but most respectfully it is a chance worth taking and if Mr. Snipes violates the trust the Court has demonstrated in him, this Court should certainly feel free to punish Mr. Snipes quite harshly.  Mr. Snipes knows full well that he needs to lead a law-abiding life or he will end up in jail and Mr. Snipes certainly wants to avoid that circumstance.

Thank you very much for your consideration of this matter.

Most Respectfully,

David Touger

cc.: Jordan Estes, AUSA
     Jill S. Jefferies, US Probation Officer

TRULINCS 79626054 - SNIPESE, JAMESE - Unit: BRO-J-A

--------------------------------------------------------------------------------------------------------

FROM: 79626054
TO: Bullock, Domnique; Touger, Daniel
SUBJECT: MY LETTER HOW IIS IT ?
DATE: 08/08/2018 09:17:09 PM

Dear Judge Sweets,

My name is Jamese Snipes. I am currently in front of your Honorable Court awaiting sentencing after pleading guilty to racketeering. First and foremost, I would like to express my apologizes to all my victims. Narcotics crimes are never victimless. I decided that the best way to make money was to participate in the flood of drugs into the community that raised me. As a direct result of this criminal endeavor, I harmed my community. I will seek atonement well after I cease serving time for my conviction. I would also like to apologize to my family. I have two young girls who have been without me for the past year. I take care of these girls with every penny of my income from working three jobs: I worked at the Bronx Zoo in food preparation, at a restaurant called "Brger" and at a Polo Ralph Lauren retail location. This work schedule was hectic, arduous but fulfilling because I knew the income that I gained from this directly benefited my children. I wanted nothing of value to be out of reach of my two children.

Invariably, I imagine you have read numerous letters from numerous defendants. Unfortunately, do to my poor conduct, I have ended up as one of them. Like many of them I swear that I will never see the inside of a prison cell again. I have a plan that I have called, "The Five Year Plan". I will utilize the skills learned during my incarceration to implement this plan. The first part of this plan is to get a basic education. At the Metropolitan Detention Center I passed the GED math exam. I plan on completing the GED while in the BOP. I left school as a young man so I could work to support myself because I did not think a high school diploma was valuable. I have since realized the error of my ways as I have gotten older. I realize now how important education is; not only for career prospects but also for personal enlightenment. In jail I have developed an appetite for reading that I never had outside of jail. I now read the New York Times and Wall Street Journal whenever I can get a copy and I read whatever books I can get my hands on.

My Five Year Plan was inspired by a NPR show I listened to. The first step in this Five Year Plan is attaining my GED (which I am well on my way to receiving). The second step is attaining some vocational training so I can enter a skilled trade like plumbing or HVAC engineering. The third step is to attain enough capital to purchase a home for myself and my young family. It is my understanding that in a BOP facility I will be afforded the opportunity to learn various skills like welding, long haul trucking, etc.. I plan on getting as many skills and certifications as possible so that I can be as valuable as possible to my future employers. I know that these skills will give me the opportunity to be able to provide a middle-class living for my young children.

The fourth step of this Five Year Plan is to move out of New York to a place with better job opportunities. The fifth part of this Five Year Plan is to minister and to advise the youth. I understand that I am completely responsible for my actions and my path in life but I feel that if I had an advisor to show me the way in life I would be in a better position now. I want to advise the youth that drugs and gangs will only leave them in prison, poor, injured, or dead. I have lived it, seen it, and will never forget it. I will be an effective steward of young people because there is nothing that they are going through that I have not experienced ten-fold.

The sixth step of this Five Year Plan is to begin an organized organization that gives back to my community. I want to raise money en masse to give to after-school programs and tutoring for the urban youth. I truly feel that if these things were available to me I would not be in my current predicament. I have seen how comparable organizations in New York have turned divided neighborhoods into peaceful, prosperous, and thriving places.

Invariably, I write this letter not to ask for leniency but to explain myself and to tell you what type of man I am and the type of man I wish to become. The crimes that have landed me in prison were committed when I was young and dumb. I never had a father figure and I was raised by a single mother who was constantly overworked. From a young age I found solidarity and family in street gangs that gave me a feeling of belonging. I know now that I erred drastically in my desire to be "down" with such terrible characters. Regardless of my sentence I will continue my march forward to a life of prosperity and generosity.

With much respect for your Honorable Court,

Jamese Snipes



# U.S. Department of Justice
## Federal Bureau of Prisons
### MDC Brooklyn Education Department

Presents this Certificate to

*Janese Stifese*

In recognition of *Instruction* course

**GED ACE MATH**
at MDC Brooklyn

**August 4, 2018**

R.Kirkland/ Teacher

**Facilitator Name- Facilitator Title**





# METROPOLITAN DETENTION CENTER BROOKLYN

## CERTIFICATE OF ACCOMPLISHMENT

### Jamese Snipese

Register No. 79626-054

Is presented with the

## Exemplary Service Award
## Origami Instructor

for maintaining the highest standards, looking after the smallest detail, and going the extra mile as a Recreation Aide for Recreation Services. Your tireless enthusiasm, hard work and dedication to the inmate population at Metropolitan Detention Center Brooklyn is commendable.

This certificate is hereby issued this 15th day of June, 2018.

_____
D. Harper, Recreation Specialist



# COLUMBIA UNIVERSITY
## IN THE CITY OF NEW YORK

*This Certifies That*

# James Snipese

*has successfully completed the Course of Study as prescribed by the*

*Justice–in–Education Initiative Scholars program and in testimony thereof is awarded this*

# Certificate

for

# Critical Thinking Mini Course

*Instructor*

8/31/-8

*Date*



# U.S. Department of Justice
## Federal Bureau of Prisons
### MDC Brooklyn Education Department

Presents this Certificate to

# Jamese Snipese

In recognition of your completion of *Instruction* course

# Entrepreneurship
### MDC Brooklyn

December 30th, 2017

C. Bramble- Education Technician

# U.S. Department of Justice
## Federal Bureau of Prisons
### MDC Brooklyn Education Department

Presents this Certificate to



*Janese Snipese*

Instructor-led training; developed jointly by FDIC and CFPB:

# Money Smart For Older Adults

*Instructor-led training developed by the Education Department at MDC Brooklyn*

D GRECO , TEACHER

**January 12, 2017**



**U.S. Department of Justice**
Federal Bureau of Prisons
MDC Brooklyn Education Department

Presents this Certificate to

*James Snipes*

Instructor-led training, developed jointly by FDIC and CFPB:

**Money Smart For Older Adults**

*Instructor-led training developed by the*
*Education Department at MDC Brooklyn*

D.GRECO - TEACHER

**January 12, 2017**

# Certificate of Achievement

This certifies that

**James Snipes**
has satisfactorily completed the

*ORIGAMI CLASS*



Consisting of 5 Hours of Training

This certificate is hereby issued this 15th day of May, 2018

*D.Harper*

D. Harper, Recreation Specialist

# MDC Brooklyn
# Recreation Department

This is to Certify that

## Jamese Snipese

Has Successfully Completed the

### Advance Real Body Blueprint Class

This certificate is hereby issued this 2nd day of November, 2017

*D. Siddiqui*

Recreation Specialist



# MDC Brooklyn
## Recreation Department

*This is to Certify that*

## Jamese Snipese

*Has Successfully Completed the*

### Advanced Real Body Blueprint Class

*This certificate is hereby issued this 18th day of October, 2017*

**D. Siddiqui**

*Recreation Specialist*