

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 5, 2023

**BY ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    ***United States v. Jamese Snipes*, 22 Cr. 418 (AT)**
             ***United States v. Jamese Snipes*, 17 Cr. 611 (AT)**

Dear Judge Torres:

       The defendant in the above-captioned cases, Jamese Snipes, is scheduled to be sentenced on March 14, 2023 at 11:00 a.m., in connection with having (1) pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2; and (2) admitted to violating the terms of his supervised release by committing the aforementioned federal crime. For the reasons explained below, the Government submits that a sentence at the top of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 24 to 30 months' imprisonment is warranted for Snipes' underlying felon-in-possession offense and a consecutive sentence of six months' imprisonment is warranted for his supervised release violation.

**I.      Offense Conduct and Procedural History**

       On or about July 26, 2019, the defendant was released from prison and began a three-year term of supervised release after serving a two-year sentence of imprisonment imposed by this Court for racketeering conspiracy. (*See* Amended Violation Report, dated Feb. 17, 2023 (the "2023 Violation Report")). The charges in that case arose from Snipes' participation in two shootings and a drug conspiracy as part of the "Young Gunnaz" street gang. (Presentence Investigation Report, dated Feb. 6, 2023 ("PSR") ¶ 9). On April 27, 2015, Snipes shot at rival gang members after having planned the shooting on social media. (*Id.*) Moreover, on March 7, 2016, Snipes aided and abetted another individual, who shot and injured a rival gang member. (*Id.*) Snipes also distributed between one and two-and-a-half kilograms of marijuana during the course of the conspiracy. (*Id.*) At sentencing, this Court recognized that there was "sufficient support for a Guidelines' sentence" of 78 to 97 months' imprisonment "because Mr. Snipes engaged in violent criminal activity." (July 25, 2019 Sent Tr. at 13). However, considering, among other things, that the defendant appeared "to have given serious thought to changing his life" and "want[ed] to be part of those who are trying to restore optimism and safety" at the Mill Brook Houses, this Court instead imposed a 24-month sentence, significantly below the bottom of the

Guidelines range.  (*Id.* at 15, 16–17).  In light of the time already spent in custody, the defendant was released the following day.

In or about August 2020, the defendant violated the terms of his supervised release by failing to report to the Probation Office as directed and failing to participate in a substance abuse program.  (*See* Violation Report, dated Sept. 3, 2020 (the "2020 Violation Report")).  Specifically, from approximately July 29, 2020 through September 3, 2020, the defendant did not report to the Probation Office and the Probation Officer was unable to locate or contact him.  In addition, the defendant was unsuccessfully discharged from an outpatient substance abuse treatment program as the result of his lack of participation in the program.  On November 19, 2020, the defendant admitted to both specifications.  On the same day, this Court sentenced the defendant to time served (approximately 16 days) – well below the Guidelines' range of four to ten months' imprisonment (*see* 2020 Violation Report at 4) – and modified his conditions of supervised release to include an inpatient substance abuse treatment program.   (November 19, 2020 Sent. Tr. at 26).  In imposing this sentence, this Court "caution[ed]" the defendant that he "must comply strictly with all of the conditions of [his] supervised release," and that, if he were "brought back before [the Court] for another violation of these conditions," the Court "may sentence [him] to a term of imprisonment." (*Id.* at 27).

In August 2021, the Probation Office notified this Court that the defendant had again violated the terms of his supervised release, in that he had: been arrested in the Bronx on or about August 19, 2021 on charges including menacing in the second degree and criminal possession of a weapon in the fourth degree – firearm; used amphetamines, methamphetamines, and marijuana on multiple occasions; left his residence without approval while on home confinement on three occasions; failed to complete an inpatient substance abuse treatment program; and failed to report as directed to an outpatient substance abuse treatment program.  (*See* Violation Report, August 19, 2021 (the "2021 Violation Report")).   On October 18, 2021, the defendant admitted to the specifications pertaining to using amphetamines, methamphetamines, and marijuana; leaving his residence without approval; and failing to complete an inpatient substance abuse treatment program and report to an outpatient substance abuse treatment program.  (*See* Judgment, 17 Cr. 611, Dkt. 769).  On the same day, this Court sentenced the defendant to time served (approximately 54 days) (*see id.*), again well below the Guidelines' range of four to ten months' imprisonment, (*see* 2021 Violation Report at 4).

On or about July 5, 2022, the defendant was found to be in possession of a firearm.  On that date, three New York City Police Department ("NYPD") officers (the "Officers") were conducting a directed patrol at the Mill Brook Houses. (PSR ¶ 10).  After the Officers exited their vehicle and began to walk toward the Mill Brook Houses, they saw a group of individuals, including the defendant, located near some outdoor benches.  (*Id.* ¶ 11).  One of these individuals ("Individual-1") is a person known to the Officers to have been involved in prior incidents involving gang and firearm activity.  (*Id.*).

Upon becoming aware of the Officers, Individual-1 began walking back and forth away from and toward the Officers and, as the Officers approached, began turning his body away from the Officers.  (*Id.*).  As the Officers got closer, Individual-1 was standing in front of a bench.  (*Id.*). The defendant was sitting on the bench behind Individual-1.  (*Id.*).  The Officers saw Individual-1

reach into his pocket with his left hand and then make a flicking motion.  (*Id.*).  At that point, the Officers heard a noise.  Individual-1 appeared to be attempting to block the Officers from the bench.  (*Id.*).  One of the officers ("Officer-1") then saw a firearm on the bench.  (*Id.*).  At this time, the defendant was seated on the bench next to the firearm.  (*Id.*).  In reaching for the firearm and around Individual-1, Officer-1 felt a hard object in the pocket of the defendant's sweatshirt, near his lap area.  (*Id.*).  Once Individual-1 was securely restrained in handcuffs, Officer-1 frisked the area on the defendant where he had previously felt the hard object and confirmed that the object was a firearm (the "Firearm").  (*Id.*  ¶ 12).  The Officers then attempted to arrest the defendant, who resisted.  (*Id.*).  As the defendant resisted arrest, the Firearm fell to the ground and was recovered by one of the Officers.  (*Id.*).  The Firearm was a loaded Smith & Wesson .38 caliber revolver, with the serial number on the bottom of the butt defaced.  (*Id.*).

On November 15, 2022, the defendant pled guilty pursuant to a plea agreement to Count One of Indictment 22 Cr. 418 (AT), to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), and 2.  In the plea agreement, the parties stipulated to an applicable Guidelines range of 24 to 30 months' imprisonment.  (PSR ¶ 5).  The Probation Office concurs with this Guidelines calculation.  (*Id.* ¶ 87).  On March 1, 2023, the defendant admitted having violated the terms of his supervised release by committing the federal crime of being a felon in possession of a firearm.  The Guidelines range applicable to the supervised release violation is six to 12 months' imprisonment.  (2023 Violation Report at 7).

## II.    Discussion

### A.  Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone.  Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant;

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Further, in sentencing for a violation of supervised release, "a sentencing court 'may, after considering' a variety of factors set forth in § 3553(a)—including any relevant policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3), *see* 18 U.S.C. § 3553(a)(4)(B)—revoke a defendant's term of supervised release and require the defendant to serve a term of imprisonment, if the court first determines that the defendant violated the terms of his or her supervised release." *United States v. Lewis*, 424 F.3d 239, 243–44 (2d Cir. 2005); *see* 18 U.S.C. § 3583(e).

In assessing the appropriate sentence, the goal of a revocation sentence is primarily "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*

### B. A Sentence at the Top of the Guidelines Range is Warranted for the Felon-in-Possession Charge

In this case, the Section 3553(a) factors counsel in favor of a sentence of 30 months' imprisonment – the top of the Guidelines range – for the defendant's possession of a firearm after having been convicted of a felony. In particular, a top-of-the-Guidelines sentence is warranted in light of the need for the sentence imposed to reflect the nature and circumstances of the offense and the history and characteristics of the defendant; to afford adequate specific and general deterrence; and to protect the public from further crimes of the defendant.

*First*, a sentence of 30 months' imprisonment is appropriate in light of the nature and circumstances of the offense and the history and characteristics of the defendant. As to the nature and circumstances of the offense, the defendant's possession of a loaded firearm is extremely serious criminal conduct. Moreover, with regard to the history and characteristics of the defendant, it is significant that the instant charge is not the defendant's first firearm-related offense. Rather, the defendant's prior racketeering conspiracy conviction stemmed from, among other things, his participation in two separate shootings nearly one year apart. Although the defense points to the defendant's desire to be "a positive force for himself, his family specifically and society in general" (Def. Br. at 3) – a desire that this Court has also noted at prior proceedings (*see* July 25, 2019 Sent Tr. at 16–17) – the defendant's history and the instant offense demonstrate that he continues to engage in dangerous criminal conduct. In particular, after representing to this Court that he

intended "to be part of those who are trying to restore optimism and safety at Mill Brook" (July 25, 2019 Sent Tr. at 17), the defendant was instead present at that very location with a loaded gun.

*Second*, a top-of-the-Guidelines sentence is necessary to afford adequate specific and general deterrence. The defendant has previously been sentenced three times by this Court, in connection with his 2019 racketeering conspiracy conviction and his two prior violations of supervised release. The defense requests that "this Court[] take into consideration the component of mercy over punishment." (Def. Br. at 7). But this Court has already shown considerable leniency toward the defendant and given him multiple opportunities to conform his behavior to the law. Indeed, each of the three sentences previously imposed by this Court were substantially below the applicable Guidelines ranges. At this juncture, it is plain that none of the penalties imposed to date have deterred the defendant from engaging in serious criminal conduct. Further, a sentence of 30 months' imprisonment is also warranted to afford adequate general deterrence. Such a sentence sends an appropriate message that repeated criminal conduct – and particularly conduct involving firearms – will be met with commensurate punishment.

*Third*, a sentence of 30 months' imprisonment is necessary to protect the public from further crimes by the defendant. As set forth above, the defendant has continued to engage in unlawful conduct involving firearms. A significant sentence of imprisonment is necessary to protect the public from such crimes.

## C. A Consecutive Sentence of Six Months' Incarceration is Warranted for the Supervised Release Violation

The Court should additionally impose a consecutive sentence of six months' imprisonment, within the applicable Guidelines range of six to 12 months' imprisonment, for the defendant's violation of the terms of his supervised release. The defendant has repeatedly and consistently violated the trust placed in him by this Court while on court-imposed supervision. He has already been sentenced by this Court on two separate occasions for multiple violations of his supervised release conditions. Prior to the instant offense, these violations have included failing to report to the Probation Office; twice being unsuccessfully discharged from substance abuse treatment programs; using multiple types of controlled substances; and failing to report to an outpatient substance abuse treatment program. As the Probation Office stated, while on supervision the defendant "was provided with resources and engaged in programming" and "had the continued support of his family and the probation department," and yet "[i]nstead of using these resources to his advantage, . . . has chosen to continue in criminality." (2023 Violation Report at 8). This behavior demonstrates the defendant's "blatant disregard for the justice system as well as supervised release while continuing to place the community in danger by possessing illegal firearms." (*Id.*). A consecutive sentence within the Guidelines range would appropriately address the defendant's latest breach of this Court's trust while also recognizing the serious nature of the particular violation. *See United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." (quoting U.S.S.G. Chap. 7, Pt. A 3(b))).

### III.     Conclusion

For the reasons explained above, the Government respectfully submits that the Court should sentence the defendant to 30 months' imprisonment for the underlying felon-in-possession offense and a consecutive sentence of six months' imprisonment for the supervised release violation.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    _____
Alexandra S. Messiter
Assistant United States Attorney
(212) 637-2544

Cc:  David Touger, Esq. (by ECF)